## CRAWFORD v
## INDUSTRIAL COMMISSION

Ohio Appeals, 2nd Dist, Montgomery Co

No 1084.  Decided Jan 4, 1932

L. E. Speer, Dayton, for plaintiff in error.

Calvin Crawford, Prosecuting Attorney, Dayton, and Ralph Skilken for defendant in error.

HORNBECK, J.

We consider the second claim first, namely, the unconstitutionality of the statute. In State ex Kauffman v The Industrial Commission of Ohio, Marshall, CJ, used this language:

"We are informed by the allegations of the pleadings certain additional evidence was in fact introduced but it is quite certain at this time (December 18, 1929) and may therefore be stated as a guidance to further cases that additional evidence may not be introduced at the trial upon appeal, but that the case must be heard in court upon the evidence adduced before the Commission."

It is true as claimed, by counsel for plaintiff in error that the issue drawn in the case decided did not require the statement of the court just quoted nor was the constitutionality of the act challenged and it is therefore not binding as an adjudication. However, it is obvious by the language employed, namely, the purpose to give guidance to all who might be concerned in the future respecting the trial of these cases on appeal, that the court give mature consideration to the question and spoke advisedly. Its pronouncement is definite and certain and must be respected as indicating the judgment of the members of the court who concurred in the opinion on the effect of §1465-90 GC in the particular discussed. We hold the statute to be constitutional.

The facts out of which the case under consideration arose were substantially these, Albert Crawford was and had been for sometime prior to September 13, 1924 in the employ of the Cappel Furniture Company of Dayton, Ohio as a deliveryman and truck driver. On the afternoon of the above date he and a helper loaded and transported 3½ truck loads of mattresses to a four story building at the Dayton University. To deliver these mattresses it was necessary to use stairways as there was no elevator service. The fourth floor was reached by means of three flights of stairs. The testimony discloses that these two men carried all of these mattresses, weighing approximately 35 lbs. each, up the stairways the method of carrying the mattresses was to put two of them on the head and then move them up the stairs to the place of delivery. The testimony discloses that they were much hurried in so doing. Notwithstanding the haste with which they were compelled to do their work, plaintiff's decedent was late in completing his work for the afternoon. At the time that plaintiff's decedent left Mr. Sheath, his helper, he complained of being tired. Mr. Sheath explained he was a man who did not complain. He went home immediately, arriving there about 5:30 P. M. and complained to his wife of pains in the chest extending to his elbow. The extent to which he complained on Saturday night is not disclosed at length but it does appear at page 7 of the recross examination by Judge Graven of the Commission that plaintiff's decedent complained to her on Saturday night.

His illness continued on Sunday and on the afternoon thereof he went to Dr. S. E. Hendron's office. (There is some claim that he consulted the doctor on Saturday afternoon). It is testified that he was in a terrible condition when brought to the doctor's office. The doctor prescribed for Mr. Crawford. He returned to his home and took his medicine regularly; at about 10 o'clock Sunday night he had left his bed to go to the toilet; he was there but a short time when he returned to his bed and when about to remove his bath robe fell back upon the bed uttered a choking sound and immediately died. The doctor was called and pronounced the cause of death to be acute cardiac dilatation, secondary cause, chronic myocarditis which causes were carried into the death certificate provided by the doctor.

The evidence further developed that Mr. Crawford was a man five feet four inches tall, weighed about 165 pounds, had suffered no illness prior to the Saturday after the completion of his work. He had been regularly employed for seven years with the Cappel Furniture Company in the same duties which he was performing on Saturday, September 13, 1924. The doctor testified that the symptoms of acute dilatation of the heart would be pain in the chest in the region of the heart, under the left arm pit and in extreme cases extending down and into the elbow. It thus appears that there was direct relation between the complaint of Mr. Crawford of pain in his chest, extending to his elbow and the acute dilatation of the heart of which he died. At page 14 of the record before the Commission on rehearing this question was put to Dr. Hendron and answer made.

"Q. Assume that a man died suddenly, while engaged in the line of his business, and that the cause of his death was contributed primarily to 'Acute Dilatation' secondary cause, 'Myocarditis, chronic,' just assume that previous thereto he had been engaged in carrying up mattresses up flights of stairs, two, three and four floors, carried two mattresses at a time, weighing about 60 lbs., and assume that his duties were to deliver furniture to different localities, would or would not his death be a result of an injury, sustained in the course of and arising out of his employment.

A. I think it could."

There are certain outstanding indisputable facts in this case. The only medical testimony in the record was offered by the plaintiff. It is to the effect that Mr. Crawford was suffering from chronic myocarditis which is an affection of the muscle of the heart. It is also undisputed that the immediate cause of his death was acute heart dilatation. There would seem to be little doubt that his death resulted from a continuing cause which had its inception on Saturday afternoon when he was delivering the mattresses. There is nothing to indicate that any cause other than this could have intervened to reasonably account for his sudden death on Sunday night. Of course, the myocarditis indicated that his heart was in such a weakened condition as that a lesser strain would cause acute dilatation and death than if it had been sound.

In Adams new Workmen's Compensation Law of Ohio, page 27, he states:

"An injury to an employe's diseased heart or blood vessel by sudden over-exertion, or unusual strain, is an injury within the act."

and cites in support thereof **Industrial Commission v Betlyoun, 31 Oh Ap 430, (7 Abs 542), and Industrial Commission v Dunham, 33 Oh Ap 237.**

Industrial Commission v Dunham was a case wherein plaintiff's decedent had made several trips carrying heavy chairs from the second floor to the first floor of his employer's factory and after his last trip told his fellow employee he had sneezed while carrying one of the heavy chairs and tore something loose inside. Death having been caused by the rupture of a broken blood vessel near the heart, held, caused by injury sustained in the course of employment.

In defining an injury as relates to the heart the second proposition of the syllabus of Industrial Commission v Betlyoun, supra, says:

"An injury compensable under the Workmen's Compensation Law must be a physical one, accidentally sustained; hence, if a workman's diseased heart is injured in an accident in the course of his employment, he is entitled to compensation; but a workman who has a diseased heart, which, in consequence of the nature of his employment, is gradually impaired so that he eventually becomes disabled, is not entitled to compensation."

We believe that the facts in the instant case bring the occurrences affecting plaintiff's decedent within the first part of the syllabus just quoted.

In **Industrial Commission v Davis, 119 Oh St, 221** the court sustained the judgment of the lower courts refusing dependents of an employee the right to participate in the Workmen's Compensation fund. The facts were that the plaintiff's decedent was employed as a janitor of a public school building. One of the duties of his employment requiring attention to the furnace in the building and the shoveling of coal to the furnace. It was claimed that while engaged in shoveling coal he was suddenly attacked by severe pains in the chest and shortness of breath which required him to stop his work and lie down; that he was given medical · attention promptly; that he died about 11 o'clock that night as a result of the attack. The court says at page 225,

"There is an entire absence in the record of any evidence showing, or tending to show, any over-strain or unusual exercise of any kind. It is not claimed and of course could not be claimed that the nature of his employment brought on this heart trouble or aggravated it or accelerated it in any way. * * * the record does not show that the employer called upon him to do anything out of the ordinary line of his work, or that he volunteered himself to engage in anything which called in any manner for any overstrain."

And at page 224:

"There is no evidence in the record that immediately prior to the attack the deceased was in any way over-exercising himself or doing anything that was not a part of his regular duties, or that he was performing any of his duties in any manner other than as he performed them from day to day. Nothing special or out of the ordinary was required of him by his employer."

It seems to us that the court at least conversely says that had Davis been engaged in performing his regular duties in an extraordinary manner, or had he been subjected to over-strain or unusual exercise of any kind which aggravated or accelerated the heart trouble from which he suffered as a result of which it appeared that his heart was actually dilated resulting in his death that the case would have presented an entirely different situation. See also the late cases of Rosichan v Hoose, Ohio Bar, December 22, 1931, 25, **40 Oh Ap 25 (10 Abs 453),** Industrial Commission v Gillard, 35 **OLR** 473; **41 Oh Ap 297 (12 Abs**

495); December 21, 1931.

It is common knowledge that the hurried climbing of a flight of stairs in and of itself is violent exercise liable to bring on marked acceleration of the heart beat. It has been said running up a flight of stairs is equal to playing two sets of Tennis, one of the most violent forms of sport known. In this case plaintiff's decedent not only climbed three flights of stairs but in addition thereto had to carry heavy loads upon his head in a most strained physical posture.

It is necessary if plaintiff recover that she prove (1) That her decedent received an injury from which he died (2) That this injury was received in the course of or growing out of his employment. It was not necessary that she show that the injury was the sole cause of his death, the demands of proof were met if it accelerated his death.

We think the language of Judge Snediker in McCain v Industrial Commission of Ohio **28 N.P. (N.S.) 45,** is pertinent.

"The testimony shows that at his (McCain's) age there is a possibility of him being subject to arteriosclerosis or hardening of the arteries. This occurs in different persons at different times and is a progressive affliction and it might have been true that arteriosclerosis had set in. When he was found, the coroner was called in and his diagnosis was acute cardiac dilatation. * * * The physicians who were called for the purpose of testifying as experts on behalf of the plaintiff stated that acute cardiac dilatation might occur from the lifting or carrying of heavy loads and particularly this might be true if certain attitudes of the body were called for during such exercise. In other words, the heart responds as the occasion requires. Any violent or extraordinary exercise of the muscles leads to activity of the heart, which is compelled to or does throw sufficient blood through the system to assist in carrying out the operation. As one of the doctors testified the same result occurs if anybody violently exerts himself in running after a street car. * * *

One of the reasons urged by counsel for the Commission is that there is no testimony that just at the time when McCain was attacked he was lifting any heavy load or making any great exertion. We do not understand that it is necessary for a plaintiff in a case like this to show an instantaneous connection between employment and death."

The court then refers to and quotes with approval from **Industrial Commission v Dunham, 33 Oh Ap, 237** and later from **Mitchell v Industrial Commission, 20 O. N. P. (N.S.), 569:**

"It is an old principle that the acceleration of death causes death, according to both the civil and criminal law. Or, as stated by Honnold on Workmen's Compensation, at §133: 'Where, but for the accident, the person would not have died at the time at which and in the way in which he did die, the accident must be held to have been the cause of his death'."

We recently held in the case of **Industrial Commission of Ohio v Perry, unreported, No. 2600, Court of Appeals of Franklin County,** where the employee, a plasterer had suffered from a rheumatic heart and while engaged on a job was required to suddenly speed up his work with the result that he stopped temporarily suffered acute pain in the chest and about the heart thereafter he worked intermittently and some six months following died from acute dilatation of the heart, that under these circumstances dilatation of the heart might be classified as an injury. We think the facts in this case are strong enough to support the same conclusion. It seems highly probable that the unusual strain which must have been placed upon Mr. Crawford's heart in hurriedly climbing many flights of stairs and carrying upon his head two mattresses caused a sudden, unusual and extraordinary strain upon his weakened heart with the resultant dilatation that caused his death.

The record supports the inference that no other cause than the unusual exertion incident to the moving of the mattresses intervened between Saturday and Sunday night when Mr. Crawford died which could explain his death. If acute dilatation of the heart is an injury, and we believe it is, then he suffered an injury Saturday afternoon from which he died on Sunday night. The injury obviously arose from and grew out of the course of his employment. Being of this opinion we feel that the judgment of the trial court was manifestly against the weight of the evidence. It will therefore be reversed.

ALLREAD, PJ, and KUNKLE, J, concur.