## INDUSTRIAL COMMISSION v LUGER

Ohio Appeals, 2nd Dist, Montgomery Co

No 1338. Decided Feb 21, 1936

Nicholas Nolan, Prosecuting Attorney, Dayton, and R. R. Zurmehly, Special Counsel to the Attorney General, Columbus, for plaintiff in error.

Rex Miller, Dayton, for defendant in error.

## OPINION

### By HORNBECK, J.

Error is prosecuted from a judgment of the Common Pleas Court on a verdict in favor of the defendant in error holding that he was entitled to be compensated from the Workmen's Compensation Fund by reason of an injury which he suffered in the course of his employment.

The brief of plaintiff in error raises two questions (1) Variance of proof, and (2) Failure on the part of defendant in error to show that the injury complained of was accidental in origin.

So much of the petition as is necessary to a consideration of the questions presented is as follows; claimant avers that while employed by "Cookie's Market," owned by R. D. Schear, Dayton, Ohio, as a meat cutter that:

"during said week of October 16th, 1932, and on or about the 20th day of the said month, while at work for the said R. D. Schear, and in the course of said employment, this plaintiff was injured while carrying the half of a beef side weighing either three hundred thirty-one (331) or three hundred forty-four (344) pounds, from the refrigerator to the cutting block in said store. Such injury consisted of a strain and tear of the tissue of the right groin. and resulted in an indirect, incomplete right inguinal hernia."

It is urged that there is no evidence that the claimant ever carried a whole side of beer at one time as it is claimed in the petition.

We believe that the language of the petition is susceptible of the construction that the half of the beef which the plaintiff was handling when injured weighed from 331 to 334 pounds, although he was actually lifting but a half of the half or a quarter of the beef when injured, although he was making disposal of the one-half. We perceive no prejudice to the Commission in the pleading in conjunction with the proof as it becomes apparent that the pleader was merely setting forth the weight of the half of the beef and not the weight of the quarter of the beef.

Coming to the second question, namely, whether or not any proper inference could be drawn from the facts appearing in the record which permits of the conclusion that Luger suffered an accidental injury.

The claim of Luger was that while lifting the quarter of a beef which was much heavier than ordinarily handled by him he suddenly suffered a strain evidenced by pain in the groin and suffering at the time resulting in an inguinal hernia. The record discloses that the quarter of beef which Luger was handling at the time that he claims to have been injured was unusually heavy; that he noticed its weight when he began to lift it. Its unusual size was disclosed by the records of the employer. Plaintiff testified that he realized that he was on an awful strain, that he had all he could do to throw the portion of beef which he was handling on to the block and that as he was throwing the beef on to the meat block, "I got that pain right in my groin here." (Indicating right groin) "Kind of doubled me up, pain was sharp and as I lifted the meat on to the block I kind of leaned on to the block with the meat."

There was expert testimony to the effect that the hernia which Luger suffered was an indirect, incomplete right inguinal hernia to be classified as an acquired hernia and that it could have been the result of the strain or tear occasioned by the lifting of the excessive weight of the beef.

It is urged by counsel for the Commission that Luger at the time of the injury was following the ordinary course of his employment, doing regular work in a regular way and that the resulting hernia, if it did result from an injury, was not accidental in origin but the result of the ordinary strain incident to Luger's employment. Supporting the claim of the Commission the following cases are cited:

Industrial Commission v Franken, 126 Oh St, 299.

Industrial Commission v Crawford, 126 Oh St, 379.

Industrial Commission v Middleton, 126 Oh St, 212.

Industrial Commission v Lambert, 126 Oh St, 501.

The claim of counsel for Luger is that the latest interpretation of the term "accidental injury" by our Supreme Court supports the right of the jury to determine, as a matter of fact in the instant cause, that Luger suffered an accidental injury. He cites and discusses the following Supreme Court cases:

Munding v Industrial Commission, 92 Oh St, 434.

Industrial Commission v Weigandt, 102 Oh St, 1.

Spicer Mfg. Company v Tucker, 127 Oh St, 421.

Industrial Commission v Polcen, 121 Oh St, 377.

And the following Court of Appeals opinions:

Baker v Industrial Commission, 44 Oh Ap, 539 (14 Abs 315.)

Industrial Commission v Smith, 44 Oh Ap, 362.

We are especially familiar with the first three cases cited by plaintiff in error because they were reviewed in this court. We have also carefully followed all the later pronouncements of our Supreme Court on the question of what constitutes an "accidental injury." We frankly confess that since the Crawford case and until the Tucker case was decided we were uncertain as to the differentiation which the Supreme Court meant to make in its pronouncements touching accidental injury.

A restatement of the facts in some of the cited cases will exemplify the difficulty with which this court and trial courts have been confronted in making a proper interpretation of the expression "accidental injury."

The Franken case, supra, was tried in Franklin Common Pleas Court, resulting in a judgment in favor of the claimant. Error was prosecuted to this court, resulting in an affirmance to which judgment error was prosecuted to the Supreme Court. The judgment was reversed, and final judgment entered for the Commission. The second syllabus of the Franken case is but a restatement of a well recognized interpretation by the Supreme Court of the word "injury" as employed in the Workmen's Compensation Act, as follows:

"The term 'injury' as used in the Workmen's Compensation Law of Ohio comprehends only such injuries as are accidental in their origin and cause."

The difficulty arises in the application of the law enunciated in the syllabus to the facts disclosed by the record in the Franken case. Upon review of a judgment which has resulted favorably to a party it is the obligation of reviewing courts, in considering the cause, to give the most favorable intendment to the evidence in favor of the successful party, as the facts will fairly permit. The Supreme Court opinion in the Franken case makes the statement without amplification that "no accident occurred as the term is ordinarily understood and applied," and the effect of what is said in the ordinary course of Franken's employment he experienced some ailment and that "there is no evidence whatever of any extraordinary or unusual happening in and about Franken's work preceding his illness." The physician testified that in his opinion the heart condition described was caused by "some severe muscular strain."

"There is some evidence that on the day in question he had handled a die weighing 300 pounds, but it does not appear that handling a die of that weight with the apparatus provided was any more strenuous than lifting by hand a die weighing 35 or 40 pounds."

The facts, in the most favorable light to Franken, as taken from the record, are that he was employed as a press worker, setting up and handling dies, both by hand and mechanically; that on the date that he was injured he was handling two dies weighing 150 pounds each by means of manual operation of a chain hoist. The testimony, undenied and uncontradicted, including that of Franken's physician, was that up to the date of the occurrence under consideration he was in good health. It also appeared that Franken had said after leaving work that the fly wheel with which he was working was so stiff that when he would pull on it it would feel like he was tearing loose through his chest; that while he was in the act of raising two dies, each weighing 150 pounds, by means of a pulley, as he pulled down on the fly wheel he suddenly felt like he was tearing loose in the chest. This testimony was refused upon examination in chief, but the witness who gave it was interrogated concerning the statements on her cross examination.

The occurrence happened on April 3, 1931. Dr. Snively was called late that night and arrived just after midnight. He testified that Franken was then suffering from heart trouble, "that the symptoms indicated heart strain with difficulty to breath, pain in the chest, ashen color, anxious expres-

sion, and a disturbance of the pulse; that the heart was acutely dilated and that upon the first examination of Franken a few hours after the occurrence which we have heretofore set forth, "Franken was in extremis and almost ready to die." The doctor further stated that the condition of Franken's heart in his judgment was caused from some severe muscular exertion.

Dr. Stanton also testified and said that it was his conclusion that Franken's death, which occurred on the 28th of April, 1931, was the result of dilatation of the heart caused by some unusual physical strain. Upon these facts we supported the judgment that Franken suffered an accidental injury which resulted in his death. It was our opinion that Franken must have been injured while at work; that the occurrence was sudden and unexpected; that it resulted in the dilatation of the heart diagnosed within a few hours after the occurrence, and that the effects continued with little abatement and resulted in Franken's death. Because of the uncertainty of the proof as to how Franken was injured it was a very close case on the facts.

The Franken case was decided in this court on the 25th day of September, 1931, decision in the Supreme Court March 1, 1933.

On January 4, 1932, we released an opinion in the case of **Hazel Crawford v The Industrial Commission of Ohio,** No. 1084, Montgomery County, (13 **Abs 185**) an unreported case. The facts in this case were that Albert Crawford, on and prior to September 13, 1924, was in the employ of the Cappell Furniture Company, Dayton, Ohio, as a delivery man and truck driver. On this date, which was Saturday, in the afternoon, Crawford and a helper were instructed to load, transport and unload three and one-half truck loads of mattresses to a four story building at the University of Dayton. These mattresses had to be delivered by stairway, as there was no elevator service. There were four floors, all reached by means of flights of stairs. The two men carried all of these mattresses, weighing approximately 35 pounds each, up the stairways to the upper floors. The method of carrying the mattresses was to put two of them on the head and then move them to the place of delivery. The men were hurried in making delivery and in spite of the haste with which they were compelled to work they were late in completing their task. Crawford was a man who did not ordinarily complain, but he did make some complaint

of ill feeling immediately after making delivery of the mattresses. Crawford's condition required him to consult a doctor either on the Saturday evening of the delivery of the mattresses or on Sunday afternoon following. The doctor testified that Crawford when seen was in a terrible condition, with all the symptoms of acute cardiac dilatation. Medicine was prescribed for Crawford and on Sunday night about ten o'clock following the Saturday of the occurrence heretofore delineated he left his bed to go to the toilet and upon his return, when about to remove his bathrobe, fell back upon his bed and immediately died of dilatation of the heart. The proximity of the death of Crawford to the time of the delivery of the mattresses and the physical factors appearing in the record in the interim disclosed almost beyond doubt the causal connection between the unusual strain on his heart because of the hurried and difficult delivery of the mattresses and his death.

The trial in the Common Pleas Court, where a jury was waived, had resulted in favor of the Commission. In reversing and remanding we held that the finding and judgment of the trial court were manifestly against the weight of the evidence, and that the facts justified a finding and judgment in behalf of the plaintiff, Crawford's widow.

It will be observed that this opinion, though following the Franken case in this court was before the Franken decision in the Supreme Court, and we did not then have the benefit of the Supreme Court decision in the Franken case. Error was prosecuted in the Crawford case to the Supreme Court, and in a very short memorandum opinion setting forth none of the facts the court reversed in **126 Oh St, 379,** citing Industrial Commission v Middleton, ante, 212, and Industrial Commission v Franken, ante, 299.

With the benefit of the decisions of the Supreme Court in the Franken and Crawford cases this court had a chart and compass which served its purpose until the release of the opinion and decision of **Industrial Commission v Smith,** decided June 5, 1933, by the Court of Appeals of Hamilton County, **45 Oh Ap, 362, 15 Abs 703,** the judgment in which the Supreme Court refused to certify on September 20, 1933. The syllabus in the Smith case is:

"Mitral lesion of heart due to over exertion in climbing to top of the elevator and down three times in succession to repair

belt. Held: injury in course of employment and compensable."

The facts disclose that Smith in the discharge of his regular duties as an employee of the Queen City Crushed Stone & Sand Company was called upon to repair a broken belt used in connection with the machinery. The belt broke three times. It was necessary for Smith to climb a large number of steps to reach the top of the elevator to repair the belt. Shortly after this service he complained of feeling badly and was taken home. The doctor diagnosed the case as mitral lesion of the heart caused by strain. Smith recovered somewhat and returned to his duties. In attempting to perform these duties his condition was aggravated and on September 22, 1931, some six weeks after the occurrence of repairing the belt, he died from mitral lesion of the heart. The court, citing Industrial Commission v Polcen, 121 Oh St, 377, held that Smith suffered an accidental injury.

We are without ability to make distinction between the facts in the Crawford case, supra, and the Smith case. It would seem that the facts are as alike as two peas in a pod. Note the marked similarity. In the Smith case it was his duty to fix the belt. In the Crawford case it was his obligation in his employment to load, transport and deliver the mattresses. In the Smith case to reach the broken belt he was required to climb steps on three occasions. In the Crawford case he, too, was not only required to climb many flights of stairs many times, but also each time to carry a heavy load in an unusual manner. Smith, by reason of the over-exertion in climbing the steps to and from the ladder, suffered a mitral lesion of the heart, caused by strain, but returned to his duties and did not die for six weeks after his injury. In the Crawford case he came down the night of his injury, was then in a most dangerous condition, and fell dead the next night from dilatation of the heart.

The Court of Appeals of Hamilton County reached the same conclusion in the Smith case that we reached in the Crawford case. The Supreme Court reversed the Crawford case and refused to admit the Smith case. In this situation, in view of the fact that the Supreme Court has said that a refusal to certify a case for its consideration is not determinative of any question of law decided by the Court of Appeals in the case, it follows that the law of the Crawford case, unless changed, is controlling upon us.

Following the Crawford case in the Supreme Court and the Smith case in the Court of Appeals the Supreme Court, decided Spicer Mfg. Co. v Tucker, supra, of date January 10, 1934 and later Industrial Commission v Bartholome, supra.

In the Tucker case the employee had suffered an accidental injury as a result of vaccination which he was required to have administered by reason of his employment, the wound becoming infected and causing death. The facts were decidedly different from those in the Franken or Crawford cases, but, Judge Weygandt in the opinion defined an accident as it relates to an injury, under the Workmen's Compensation Act, quoting 28 R.C.L. 787:

"While there has been a great deal of discussion as to the import of the term accident, in the phrase 'personal injury by accident arising out of,' the employment, it is evident that the word must be taken to be descriptive of the mental state of the employe at the time of the calamity. An 'accident' is something which is unforseen, and, as has been noted, the element of the event being unforseen by the planitiff forms the basis of every right of recovery. The Compensation Act authorizes an award of compensation when the injury occurs by 'accident' and in this respect is merely declaratory of the common law. The word in question is employed in contradistinction to the expression 'wilful misconduct,' which is found ordinarily in the same section or paragraph of the statute. Construing the British statute, Lord MacNaghten, in the leading case of Fenton v J. Thorley & Co., (1903) A.C. 443, said: 'The expression 'accident' is used in the public and ordinary sense of the word, as denoting an unlooked for event which is not expected or designed.' Lord Wrenbury says that: 'accident' means 'some mishap unforseen and unexpected,' and Judge Siebecker of the Wisconsin court says that 'accidental' contemplates 'an event not within one's foresight and expectation, resulting in a mishap causing injury to the employe.'. (Venner v New Dells Lumber Co., 161 Wis. 370, 154 NW 640, * * *) Again, Mr. Justice Pound of the New York court says that the statute contemplates injuries 'not expected or designed by the workman himself'." Heitz v Ruppert, 218 N. Y. 148, 112 NE 750.

In Industrial Commission v Bartholome, supra, the court held that Bartholome, in cleaning out a boiler in which there was an accumulation of soot, ashes and fine

dust, suffered, by reason of inhaling the fine particles, an infection of the lungs which either caused him to contract tuberculosis or aggravated a latent condition of tuberculosis, which hastened his death. It appeared that the cleaning of the combustion chamber in the boiler, although done but twice a year, was a regular duty performed by Bartholome. Judge Stephenson in the opinion says that it is not the wear but the tear that is compensable under the Workmen's Compensation Act, and it was held that Bartholome suffered an accidental injury as the result of the inhalation of soot and ashes. It is further said in the opinion that "if Bartholome in the performance of his duties had been required to enter this combustion chamber every day and breath the gas and fumes complained of, and inhale a certain amount of ashes, dust, and soot, a different case would be presented."

Following the refusal of the Supreme Court to certify in the Smith case, supra, and the decisions in the Bartholome and Tucker cases, supra, the following cases have been decided in the Court of Appeals:

Cincinnati Street Ry. Co. v Clock, 19 Abs 577, December 24, 1934, in which the Hamilton County Court of Appeals held that:

"An employee of a self-insurer, straining himself in such a manner as to cause a rupture of the abdominal wall while lifting heavy cans from a rack during the course of his employment, has suffered an accidental injury and is entitled to compensation under the Workmen's Compensation Law."

No motion to certify was filed in the Supreme Court and such action would have seemed futile in view of the refusal to certify Industrial Commission v Smith, supra, which also was decided in Hamilton County.

Esmonde v Lima Locomotive Works, 19 Abs 577, decided June 26, 1935, motion to certify overruled by the Supreme Court November 6, 1935, in which the Allen County Court of Appeals held:

"Where an employee engaged in the performance of his reuglar duties is subjected to extraordinary strain or other unusual condition distinctive in character and definite as to time and place resulting in an injury, such injury is an accidental injury within the meaning of the Workmen's Compensation Act and therefore compensable," and

. "Where there is evidence tending to prove

that an employee was, in the performance of his regular duties, subjected to extraordinary strain and was working under an unusual condition in that he did extra lifting and sledging occasioned by the absence of a third man ordinarily employed to assist in such operations and in that the whole operation was performed by plaintiff and one man instead of by plaintiff and two men as was customarily done, that the extraordinary strain was distinctive in character in that it caused pain in the region of the heart and was definite as to time and place in that it occurred suddenly during the progress of the work, the injury sustained is within the meaning of the Workmen's Compensation Act accidental and therefore compensable."

Esmonde was working for the Lima Locomotive Works, Inc. In his regular employment as a blacksmith's helper he was making a locomotive arched bar weighing about 350 pounds. This operation was done by the process of heating the bar, sledging it with a twelve pound sledge into four bends over a form embedded in the ground and projecting upward three and a half feet. The work consisted of four distinct operations, in the second of which there was a difficult straining lift and the heaviest work was required. During this lift the plaintiff felt a sharp pain in his left side. He felt uncomfortable, left the shop, urinated, passed bloody urine, came back holding his side, but made no complaint. The next day and following thereafter he was treated and the diagnosis indicated heart murmur and dilatation. The majority of the court held, Judge Guernsey writing the opinion, that the injury was compensable. All the recent cases on the subject of accidental injury are considered in the opinion in the Esmonde case.

Cavanaugh v Industrial Commission of Ohio, 48 Oh Ap, 541, (17 Abs 559) decided July 2, 1934, no motion to certify filed, Court of Appeals of Cuyahoga County, Judge Levine writing the opinion, held:

"Where a workman, while employed by a warehouse company as a laborer, and in the course of his employment in loading freight, attempted to catch a heavy load which had slipped from his hands, and sustained an injury to his back as a result thereof, such injury was 'accidental' within the meaning of the Workmen's Compensation Act."

In Tinker v The Firestone Tire & Rubber Co., 19 Abs 227, decided March, 1935;

motion to certify overruled by the Supreme Court June 12, 1935, the Court of Appeals of Summit County, Judge Stevens writing the opinion, held that:

"1. Damage or hurt to the brachial plexus resulting in immediate loss of use of the arm with subsequent atrophy of the deltoid muscle and the infra and supra spinatus muscles constitutes an injury which if accidental would be compensable under the Workmen's Compensation Law;" and

"2. It is a question for the jury whether the sudden unforseen, unexpected, and complete giving out of the arm and shoulder of a millworker who had been performing the same work for four years without any sign of strain or injury, is an accidental injury and as such compensable under the Workmen's Compensation Act."

Here the employee was performing his usual duties, which required strenuous pulling of stock from mill rolls with his left hand and arm. While so doing he damaged his brachial plexus, resulting in the loss of the use of the arm. There was no external trauma resulting from a blow or sudden jerk. Judge Stevens discusses the cases and particularly the opinion of Chief Justice Weygandt in Spicer Mfg. Co. v Tucker, supra. See also the late case of **Ford Motor Co. v Hunter (Butler Co.), 50 Oh Ap 547, (19 Abs 616)**—Ohio Bar, December 23, 1935.

It is obvious that if the Court of Appeals, whose opinions we have heretofore set forth, appreciated the implications of the Crawford case they were convinced that later pronouncements of the Supreme Court had inferentially overruled it. If they are in error, then an "injury" as used in the Workmen's Compensation Law, means one thing in the Second Appellate District and another in Hamilton, Cuyahoga, Allen, Butler and Summit Counties. We beleve that the principle upon which the Crawford case was decided has been repudiated in the Bartholome case and particularly in the Tucker case.

It is most fortunate that the Supreme Court has finally given the lower courts and the legal profession the benefit of a concrete statement of the meaning of the term "accidental injury" as contemplated in the construction of the Workmen's Compensation Act.

The definition of "accidental injury" as employed by Chief Justice Weygandt in the Tucker case brings the facts in the Crawford and the instant cases clearly within

its terms and requires a conclusion that in the instant case Luger suffered an accidental injury and should be compensated therefor.

The judgment of the Common Pleas Court will be affirmed.

BARNES, PJ, and BODEY, J, concur.