## OLENICK v INDUSTRIAL COMM

Ohio Appeals, 2nd Dist, Franklin Co

No 3009.   Decided May 29, 1939

Frank A. Hunter, Columbus and James F. Henderson, Columbus, for plaintiff-appellee.

Ralph J. Bartlett, Prosecuting Attorney, Columbus; David B. Sharp and Edmond B. Paxton, Asst. Pros. Attys., Columbus, for defendant-appellant.

## OPINION

BY THE COURT:

This cause had its inception in the court below on the petition of Pauline Olenick. The petition recites in substance that the cause came into court on an appeal from a decision and final action of the Industrial Commission of Ohio which had on rehearing disallowed the claim of the plaintiff for the reason that her decedent's disability was not the result of an injury sustained by him on June 9, 1932, in the course of his employment, and that the commission did not have jurisdiction or authority to inquire into the extent of the injury. The petition alleges that the employer, The Columbus Forge & Iron Company, regularly employed three or more workmen under contract and that George Olenick was an employee of such company under contract, and that while in the course of his employment he was required to assist in the handling of a 4000 pound piece of steel being forged under a four-ton hammer; that while so engaged, for some reason not known to the plaintiff, excess weight and strain were thrown upon decedent while standing in a taut position while guiding the piece of steel.

It is recited that in 1916, while decedent was working for the same employer he had been struck on the nose by a piece of flying steel which penetrated the right nostril and went down through the roof of the mouth, which wound never healed, forming ulcers and scabs on the roof of the mouth where the steel had pierced it; that such injury sustained in 1916 had resulted in a softening of the blood vessels where the steel had taken its course; that the excess weight and strain which was thrown on the decedent on June 9, 1932, caused said softened blood vessels at or near the place where the steel had pierced, to burst, causing the succession of hemorrhages resulting in great loss of blood; that decedent died on the 16th day of September, 1933; that the excess weight thrown on his body resulted in the bursting of blood vessels and subsequent hemorrhages and was the proximate cause of the death.

Plaintiff prays that the jury determine her rights. An answer was filed making certain admissions and denying all other allegations. A trial was had and the jury found that the plaintiff was entitled to participate in the insurance fund provided by the Workmen's Compensation Law of Ohio. A motion for new trial was made and overruled and final judgment entered. A notice of appeal was given within the proper time.

The assignment of errors by the defendant-appellant is to the effect that the verdict is not sustained by sufficient evidence and is contrary thereto; that the court erred in overruling the motions of the defendant for a directed verdict made at the proper time during the course of the trial and erred in overruling the motion for a judgment notwithstanding the verdict.

Plaintiff is the widow of George Olenick. On the date of the alleged injury he was employed by The Columbus Forge & Iron Company, a complying employer. On the 9th of June, 1932, while so employed by the company he was, with other workmen, engaged in forging a shaft weighing 4000 pounds and as part of the heavy tools used there was what is known as a quarter bar weighing about 1500 pounds. This tool was fastened to the end of the steel bar which, after being heated at the furnace was carried by a crane to the place where it was forged into shape by the dropping of a heavy hammer. The quarter bar had spokes which were used to turn the shaft as the progress of the

work required. It was manned by five or six workmen depending upon the weight of the forging. On the time in question the decedent was working as one of the men at the quarter bar and while so working was seized with a violent hemorrhage of the nose which caused him to be taken from his work and conducted to his home where doctors attended him. The hemorrhage was profuse and thereafter was repeated at rather frequent intervals until the decedent died in 1933, a year after the first hemorrhage. He died of a disease designated myelblastic leukmia and his death certificate so stated; also giving contributing cause of cardiac failure.

The questions before this Court as presented by the appellant are condensed into two propositions: (1) Is there any competent evidence in the record to show the decedent sustained an accidental injury as alleged in the petition?

(2) Is there competent evidence in the record which tends to show that the decedent died as a result of a ruptured blood vessel as alleged in the petion?

A number of doctors have testified as to the effect of the old injury. One doctor testifies that it would be possible over a period of years of such ulcerated condition that a strain such as lifting some heavy object would cause the hemorrhage and the disease from which the decedent died could result from a persistent loss of blood which could cause the blood disease known as leukemia, perhaps pernicious anemia. The disease could result through the formation of abnormal blood cells, the percentage of blood cells being out of proportion. Being asked whether he would see any causal connection between the washout of blood and his death, his answer was, "Yes, it could be".

Another physician being asked if he could see any causal relation between the hemorrhage and the leukemia, answered, "Yes".

As to the disease, the cause is little understood, there being no more known of the cause than of cancer. The cause is probably the same.

We have read the testimony of the other physicians and they are of the opinion that the excessive hemorrhages from which the decedent suffered might well be the cause of leukemia, the disease from which he died. The statements by the physicians, we think, are more than simply an expression of their opinion that it "might" or "could possibly" result in the condition causing death. However narrow the margin may be between the mere expression of opinion and the statement of a fact by the expert witnesses we are not disposed to disturb the verdict on the ground that no causal relation is shown between the bleeding and the death.

The more difficult question is to determine whether or not the bleeding was caused by an accidental injury suffered by the decedent during the course of his employment. Many years before he had suffered an injury from a flying piece of steel which is alleged to have made the tissues around the course of the steel especially susceptible to a jar or jolt that might not have caused any disturbance in a workman not so afflicted. Testimony has been given as as to the method by which the shaft was forged, and the total weight of the shaft and the quarter bar has been testified to. The weight, we think, is not of particular consequence in that it was not excessive and the shaft was so balanced that it would be readily turned into the desired position for the drop hammer through the instrumentality of the quarter bar manipulated by the men.

Returning to the effect of the pre-existing infirmity, the law is that the fact that an employee was suffering from a diseased condition does not necessarily bar him from the right to compensation in case of injury or disability, but an award may be had for death resulting from an injury which aggravates an existing disease or infirmity or which accelerates the same to a final determination sooner than otherwise would have come, but where

the death is due to normal progess unaffected by the employment as a proximate cause it can not be regarded as having arisen out of the employment. A breakdown or collapse of a workman suffering from an existing disease in order to be compensable must have been superinduced by some particular circumstance of an unusual character, such as an extraordinary exertion on a specific occasion, and it is not sufficient that the disablement resulted merely from the workman's performance of his duties in the usual and ordinary manner. 42 **O. Jur., p. 646.** See also a discussion of this and kindred matters in the case of **Industrial Commission v Luger, 22 Abs 20,** opinion by Judge Hornbeck.

We then have the picture of a man debilitated on account of a long-standing defect who engages with fellow workmen in performing a task which discloses no unusual incidents or even a jar or jolt which affected the other workmen or to which any testified. One workman testified that there were not less than six men manipulating the quarter bar. When the hammer strikes the shaft to which the quarter bar is fastened the piece must be level under the hammer; if not, it will result in a jar. "It is bound to jar you, a four-ton hammer." "If the crane is up a little bit or down below a little bit it is bound to jar." "If the piece is not level on the die it will break your arm. There is practically no jar if it is level on the die." The workman testifies to no such jolt or jar; all that he knows of the decedent is that he walked outside with a bleeding nose. There is no direct evidence of any kind of a lift, strain, traumatism, or the impact of any part of either the shaft or of the forging machine with the body of the decedent. It is true that there was some hearsay testimony both as to what he himself said and what others related to the effect that he had suffered a strain, but we have been unable to find any such testimony of probative value. The burden is upon the plaintiff to prove all the necessary allegations which would entitle her to recover. We have diligently searched the record and are forced to the conclusion that there is no evidence that the decedent was injured in an "accident" which is an event which occurs by chance, unexpectedly and not in the usual course of events. The only unusual event is that this workman was then helping with the handling of the shaft rather than working at another task to which he had been long accustomed. It is true that it might be possible that due to the weakening of the blood vessels of this particular workman the mere impact of a heavy hammer upon a heated shaft which was being forged into a particular shape, might have produced sufficient vibrations to cause the weakened blood vessels to rupture, resulting in a hemorrhage. However, we could not hold that such vibrations constituted an "accident", as they would be but the natural result of a heavy hammer dropping upon a steel shaft and were simply incidental to the operation. The fact that the decedent's resistance may have been so weakened by his prior accident that this ordinary occurrence resulted disastrously to him would not bring such an incident into the category of accidents.

We must arrive at the conclusion that the decedent did not suffer an accidental injury which either directly caused his death or accelerated a long-standing disease from which he had been suffering. We are willing to concede that the evidence tends to show that in this particular case the death was caused by excessive hemorrhages. However, we cannot find that the cause of the hemorrhages was a compensable accident suffered by the decedent.

We regret that we are unable to sustain the judgment of the court below. During the course of the proceeding there were proper motions made for an

instructed verdict which the court overruled. Taking the view we do, we must hold that the court erred in overruling these motions and that the duty is upon this court to enter final judgment for the defendant. Judgment accordingly.

HORNBECK, PJ, GEIGER & BARNES, JJ, concur.